UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:08-CV-1498-G |
| NORTHERN INSURANCE COMPANY, | ) ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Northern Insurance Company ("Northern")'s motion for summary judgment (docket entry 14). For the reasons discussed below, the motion is denied.

### I. BACKGROUND

#### A. Factual Background

This is a declaratory judgment action to determine whether Northern has a duty to defend a company named C. Watts & Sons Construction Company, Inc. ("C. Watts") in a suit styled *Quinlan Independent School District v. DalMac Construction Company* (cause number 72207) in the 354th Judicial District Court of Hunt County,

Texas ("the underlying suit"). Employers Mutual Casualty Company's Brief in Support of Its Response to Defendant's Motion for Summary Judgment ("Response") at 1. The underlying suit arises out of the construction of Ford High School for the Quinlan Independent School District ("Quinlan ISD"). Brief in Support of Defendant's Motion for Summary Judgment ("Motion") at 2. In April 1998, Quinlan ISD hired DalMac Construction Company ("DalMac") to be the general contractor in charge of constructing Ford High School. Plaintiff's First Amended Petition in *Quinlan Independent School District v. DalMac Construction Company* ("Quinlan ISD Petition") at 3, *located in* Appendix to Defendant Northern Insurance Company's Motion for Summary Judgment ("Appendix") at 59. DalMac hired C. Watts as its "dirt work" subcontractor on the project. Defendant / Third-Party Plaintiff DalMac Construction Company's Third-Party Original Petition ("DalMac Third-Party Petition") at 9, *located in* Appendix at 83. In August 1999, Quinlan ISD took possession of the newly constructed high school. Quinlan ISD Petition at 4, *located in* Appendix at 60. Beginning almost immediately and continuing over the next several years, Quinlan ISD experienced problems with the building. *Id.* at 4-8, *located in* Appendix at 60-64. In October 2007, Quinlan ISD brought the underlying suit against DalMac for breach of contract, negligence, breach of warranty, misrepresentation, and fraud based on alleged defects in the construction of Ford High School. *Id.* at 8-15, *located in* Appendix at 64-71. In turn, DalMac filed a third-

party petition against various subcontractors, including C. Watts, who had participated in the construction of Ford High School. DalMac Third-Party Petition at 1-2, *located in* Appendix at 75-76. DalMac seeks contribution and indemnity from C. Watts in connection with Quinlan ISD's suit against DalMac, as well as damages and attorneys' fees for C. Watts's alleged breach of its subcontract with DalMac. *Id.* at 9-10, *located in* Appendix at 83-84.

Upon being named as a third-party defendant in the underlying suit, C. Watts tendered the defense of the underlying suit to the plaintiff in this action, Employers Mutual Casualty Company ("Employers Mutual"). Plaintiff's First Amended Complaint ("Complaint") at 2. Employers Mutual issued successive annual Commercial General Liability ("CGL") insurance policies to C. Watts that were effective from November 1, 1999, to November 1, 2003. *Id.* These policies obligated Employers Mutual to defend C. Watts in legal actions alleging that C. Watts had caused property damage during the four-year period covered by the policies. Motion at 2. Employers Mutual agreed to defend C. Watts in the underlying suit, but it did so under a reservation of rights. Complaint at 2-3. Employers Mutual's reservation of rights was based on the fact that C. Watts had also purchased a CGL policy from Northern ("the Northern policy"). The Northern policy was effective from November 1, 1998, to November 1, 1999, and obligated Northern to defend C. Watts in legal actions alleging that C. Watts had caused property damage during the

one-year policy period. Motion at 2. On the basis of the Northern policy, Employers Mutual tendered the defense of C. Watts in the underlying suit to Northern. Complaint at 3. Northern denied the tender on the ground that it had no duty to defend C. Watts in the underlying suit. *Id.* Employers Mutual then filed this action seeking a declaratory judgment that Northern is obligated to participate in and share the costs of C. Watts's defense in the underlying lawsuit. *Id.* at 4-5. Northern contends that the allegations in the underlying suit do not trigger its duty to defend C. Watts under the terms of the Northern policy. Motion at 1.

## B. Procedural Background

Northern has moved for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2).[1] Material facts are those facts that the governing substantive law identifies as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[1] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986); see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.") (emphasis in original). The nonmoving party must show that the evidence is sufficient to support the resolution of a material factual issue in his favor. *Anderson*, 477 U.S. at 249. When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).

## II.  ANALYSIS

### A.  Duty to Defend

Texas follows the "eight-corners" rule of insurance contract interpretation. See, e.g., *GuideOne Elite Insurance Company v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). This rule instructs courts to determine whether an insurer has a duty to defend based solely on the language contained within the four corners of the insurance policy and the allegations contained within the four corners of the plaintiff's pleadings. *Allstate Insurance Company v. Disability Services of the Southwest, Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *National Union Fire Insurance Company of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)

(per curiam). If the pleadings allege facts stating a cause of action that potentially falls within the insurance policy's scope of coverage, the insurer has a duty to defend. *Liberty Mutual Insurance Company v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006). The duty is determined based on the presumption that the allegations in the plaintiff's pleadings are true. *Disability Services of the Southwest*, 400 F.3d at 263; *Fielder Road Baptist Church*, 197 S.W.3d at 308. The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies. *Trinity Universal Insurance Company v. Employers Mutual Casualty Company*, 592 F.3d 687, 691-92 (5th Cir. 2010). "If an insurer has a duty to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit." *General Star Indemnity Company v. Gulf Coast Marine Associates, Inc.*, 252 S.W.3d 450, 455 (Tex. App.--Houston [14th Dist.] 2008, pet. denied).

  A pair of countervailing considerations guides the court's review of the facts alleged within the four corners of the underlying pleadings. On the one hand, "the insurer's duty to defend is limited to those claims actually asserted in an underlying suit" and does not extend to "a claim that might have been alleged but was not, or a claim that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted." *Pine Oak Builders, Inc. v. Great American Lloyds Insurance Company*, 279 S.W.3d 650, 655-56

(Tex. 2009). "If the petition only alleges facts excluded by the policy, the insurer is not required to defend." *Id.* at 655 (citation and internal quotation marks omitted). The court must not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Gore Design Completions, Limited v. Hartford Fire Insurance Company*, 538 F.3d 365, 369 (5th Cir. 2008) (citation and internal quotation marks omitted). On the other hand, the factual allegations that are contained within the pleadings must be liberally construed: "If the petition does not state facts sufficient to bring the case clearly within or outside the insured's coverage, the insurer is obligated to defend if *potentially* there is a claim under the complaint within the coverage of the insured's policy." *Gulf Coast Marine Associates,* 252 S.W.3d at 454 (citing *Merchants Fast Motor Lines*, 939 S.W.2d at 141) (emphasis in original). A court may draw reasonable inferences from the pleadings that trigger an insurer's duty to defend, *id.* at 456, and doubts about whether "'the allegations of a complaint against the insured . . . [are] sufficient to compel the insurer to defend the action . . . will be resolved in [the] insured's favor,'" *Merchants Fast Motor Lines*, 939 S.W.2d at 141 (quoting *Heyden Newport Chemical Corporation v. Southern General Insurance Company*, 387 S.W.2d 22, 26 (Tex. 1965)). The net result is that insurers are advised to chart a cautious course: "When in doubt, defend," *Gore Design Completions*, 538 F.3d at 369.

### B. Application

The court concludes that the allegations in the underlying lawsuit are sufficient to trigger Northern's duty to defend C. Watts under the Northern policy. In relevant part, the Northern policy provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .
>
> b. This insurance applies to "bodily injury" or "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory", and (2) The "bodily injury" or "property damage" occurs during the policy period.

Northern Insurance Company of New York Policy No. EPA30462858 ("Northern Policy") at 36, *located in* Appendix at 39. The Northern policy appears to be the standard CGL policy that is used within the construction industry; its terms are identical to a CGL policy recently construed by the Supreme Court of Texas. Compare *id.*, with *Don's Building Supply, Inc. v. OneBeacon Insurance Company*, 267 S.W.3d 20, 23-24 (Tex. 2008) (reciting the same language); see generally *Zurich American Insurance Company v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) ("In exchange for premiums paid, CGL insurers typically promise to defend and indemnify their insureds for covered risks."). The Supreme Court of Texas has concluded that two requirements must be met for an insurer to have a duty to defend under a CGL

policy such as the Northern policy: (1) the underlying suit must "allege property damage that occurred during the policy term;" and (2) the underlying suit must allege that the property damage was "caused by" the insured. *Don's Building Supply*, 267 S.W.3d at 31.

In this case, the relevant allegation in the underlying suit is contained in paragraph 6.03 of Quinlan ISD's petition, which reads as follows:

> 6.03. On or about August 1, 1999, the District took possession of the facility. Shortly thereafter, the facility's bathrooms flooded as a direct result of poor workmanship by Dalmac related to plumbing. In 1999, at the beginning of the school year, student bathrooms . . . flooded. Several fixtures were affected by the flooding . . . . All of these fixtures required modification as a result of foundation heave.

Quinlan ISD Petition at 4, *located in* Appendix at 60.[2] The term of the Northern policy extended from November 1, 1998 to November 1, 1999. Northern Policy at 1, *located in* Appendix at 4. Therefore, as to the allegations contained in paragraph 6.03, it is undisputed that the first *Don's Building* requirement is satisfied. *See* Motion

---

[2] The parties focus their analysis exclusively on the language of Quinlan ISD's petition in the underlying suit despite the fact that Quinlan ISD's petition does not name C. Watts as a defendant. *See* Quinlan ISD Petition at 1, *located in* Appendix at 57. C. Watts is named as a defendant only in DalMac's third-party petition. *See* DalMac Third-Party Petition at 1, *located in* Appendix at 75. However, neither party has seen fit to analyze the contents of DalMac's allegations against C. Watts. Therefore, for purposes of resolving this motion the court will assume -- without deciding -- that DalMac's third-party petition (1) incorporates by reference all of the allegations advanced in Quinlan ISD's petition; and (2) declines to advance any new or additional allegations not advanced by Quinlan ISD.

at 8 (admitting that paragraph 6.03 contains "an allegation of damage during the Northern policy period").[3]

The parties dispute whether the second *Don's Building* requirement is satisfied -- specifically, whether paragraph 6.03 contains any allegation of damages "caused by" C. Watts. Employers Mutual does not contend that paragraph 6.03 unequivocally alleges that C. Watts's defective "dirt work" caused the flooding, which in turn caused foundation heave and fixture damage. *See* Response at 6-8. Rather, Employers Mutual takes the position that paragraph 6.03 is "vague" and "unclear as to what caused the flooding." *Id.* at 7. However, Employers Mutual maintains that, at a minimum, paragraph 6.03 alleges "that fixtures were damaged and required modification" and that "the cause of the damage to the fixtures" was foundation heave. *Id.* Northern responds that when "the 'foundation heave' allegation" is read in conjunction with "the others facts alleged in paragraph 6.03, it becomes clear that Quinlan ISD alleges that poor plumbing workmanship caused the bathrooms to flood, which in turn caused foundation heave, resulting in fixtures requiring modification." Defendant Northern Insurance Company's Reply Brief to Plaintiff Employers Mutual

---

[3] There are numerous additional factual allegations in the underlying petition. *See* Quinlan ISD Petition at 4-8, *located in* Appendix at 60-64. The parties dispute whether these additional allegations allege damage that occurred during the Northern-policy period and thereby trigger Northern's duty to defend. *See* Motion at 3-4; Response at 8-13. Because the court concludes that the allegations of paragraph 6.03 are sufficient to trigger Northern's duty to defend, the court does not reach the question of whether the remaining allegations also do so.

Casualty Company's Response to Defendant's Motion for Summary Judgment ("Reply") at 3.[4]

The court agrees with Employers Mutual that the allegations contained in paragraph 6.03 of the petition in the underlying suit are sufficient to trigger Northern's duty to defend C. Watts. Those allegations are admittedly not a model of clarity. But Texas law dictates that "[a]n insurer must defend its insured if a plaintiff's factual allegations *potentially* support a covered claim." *Trinity Universal Insurance Company*, 592 F.3d at 691 (quoting *Nokia*, 268 S.W.3d at 490-91) (emphasis added); see also *Ingalls Shipbuilding v. Federal Insurance Company*, 410 F.3d 214, 226 (5th Cir. 2005) ("'When pleadings are of an indefinite, vague and ambiguous nature, the courts have found that the insurer has a duty to defend the insured ....'") (quoting 22 ERIC M. HOLMES, HOLMES' APPLEMAN ON INSURANCE 2d § 136.2 at 16 (2003) and applying the eight-corners rule under Mississippi law). Even where the allegations of the underlying complaint are not just unclear but are seemingly inconsistent, if there is a possible reading of those allegations on which they fall within the scope of the policy, the insurer has a duty to defend. See, *e.g.*,

---

[4] Employers Mutual contends that "[f]oundation heave is unquestionably related to" the "dirt work that C. Watts is alleged to have performed" because "it involves the movement of the dirt beneath the foundation." Response at 7. Northern does not dispute this contention in its reply brief. Therefore, the court will follow the parties and assume, for purposes of deciding this motion, that if the underlying petition contains an allegation of property damage caused by foundation heave during Northern's time on the risk, then the underlying petition contains an allegation that falls within the scope of the Northern policy's coverage.

*Gomez v. Allstate Texas Lloyds Insurance Company*, 241 S.W.3d 196, 204-05 (Tex. App. Ft. Worth 2007, no pet.).  In *Gomez*, a homeowners' policy obligated the insurer to defend the insured in suits for bodily injury caused by the use of "four-wheeler" recreational vehicles only if the injury was caused by an accident that occurred on the premises covered by the policy.  *Id.* at 200-01, 204.  The homeowners were sued for negligence by the parents of a boy injured in a four-wheeler accident, and the insurer sought a declaratory judgment declaring that it had no duty to defend the homeowners in that suit.  *Id.* at 199-200.  The insurer relied on an allegation in the parents' negligence petition that the homeowners were negligent in allowing the boy to operate the four-wheeler "on public streets;" there were no public streets on the covered premises.  *Id.* at 204.  Despite this language, the court of appeals held that the insurer had a duty to defend.  *Id.* at 205.  The court noted that the parents' negligence petition also alleged that the homeowners were negligent in their failure "to warn of the potential existence of unreasonably dangerous conditions *on the premises*." *Id.* at 204 (emphasis in original).  Despite the seeming inconsistency of the petition's allegations, the court concluded that "[c]onstruing the petition liberally in favor of the insured" allowed "a reasonable inference [to] be drawn that the accident occurred on the [homeowners'] premises." *Id.*

Here, paragraph 6.03 in Quinlan ISD's petition in the underlying suit alleges that the fixtures that were damaged by flooding in August 1999 "required

modification as a result of foundation heave." Liberally construed, this language alleges that foundation heave caused those fixtures to be in need of modification. That allegation suggests that C. Watts's dirt work potentially caused property damage during the term of the Northern policy. True, language that appears earlier in paragraph 6.03 states that the flooding was "a direct result" of poor plumbing workmanship and that it was the flooding that affected the fixtures. In light of that language, it would certainly be reasonable to infer that faulty plumbing work was the sole cause of the flooding, which in turn caused foundation heave and damage to the fixtures. However, it would also be reasonable to infer that both faulty plumbing work and foundation heave were contributing causes of the damage to the fixtures. Texas law requires the court to draw the latter inference. See *Gore Design Completions*, 538 F.3d at 369 (explaining that where a factual allegation *can* be read in a way that triggers a duty to defend, it *must* be read that way, even where "it could also be read another way," because "where there is doubt, there is a duty to defend"); *Gehan Homes, Limited v. Employers Mutual Casualty Company*, 146 S.W.3d 833, 846 (Tex. App.--Dallas 2004, pet. denied) ("In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage."); cf. *Essex Insurance Company v. Hines*, 2010 WL 10941, at *2 (5th Cir. Jan. 4, 2010) (per curiam) (noting that, under the eight-corners rule, when the language of the governing insurance policy "is subject to two or more reasonable

interpretations, . . . an interpretation favoring coverage will be adopted even if an interpretation militating against coverage is *more* reasonable") (citation and internal quotation marks omitted) (emphasis in original).  In sum, paragraph 6.03 of Quinlan ISD's petition in the underlying suit can reasonably be read as containing an allegation of property damage caused by C. Watts during the term of the Northern policy.  That allegation triggers Northern's duty to defend C. Watts in the underlying suit.

### III.  CONCLUSION

For the reasons discussed above, Northern's motion for summary judgment is **DENIED**.

**SO ORDERED**.

March 11, 2010.

*[signature: A. Joe Fish]*

**A. JOE FISH**
**Senior United States District Judge**